UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:
**SUSAN PAGE MCDANIEL,**
                    Debtor.

---

**UNITED STATES OF AMERICA,**
                    Appellant,

                                              **Case No. 6:06-cv-1584-Orl-19KRS**
-vs-                                                  **Consolidated With**
                                                **Case No. 6:06-cv-1585-Orl-19DAB**
**SUSAN PAGE MCDANIEL,**
                    Appellee.

---

# ORDER

Appellant United States of America appeals from an Order entered by the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court") on August 16, 2006, which vacated its Debtor's Discharge Order of January 12, 2006 and dismissed Appellee Susan McDaniel's main bankruptcy case and a related adversary proceeding. (Main Bankr. Dkt. No. 29; Adv. Bankr. Dkt. No. 26, hereinafter the "Aug. 16 Order").[1] This case comes before the Court on the following:

1.     Brief For Appellant United States Of America (Case. No. 06-1584, Doc. No. 13, filed October 30, 2006);

---

[1] These consolidated appeals arose out of Appellee's main bankruptcy case (case no. 6:05-bk-10028-ABB) and a related adversary proceeding filed by Appellee against Appellant (case. no. 6:05-ap-00303-ABB). Citations to the record of the Bankruptcy Court in this opinion are abbreviated "Main Bankr. Dkt. No." for docket entries in case no. 6:05-bk-10028-ABB and "Adv. Bankr. Dkt. No." for docket entries in case no. 6:05-ap-00303-ABB. Because the parties' filings in this Court are substantially similar in both appeals, unless otherwise noted, all citations to this Court's docket refer to case no. 06:06-cv-1584-Orl-19KRS. The Court further abbreviates case no. 06:06-cv-1584-Orl-19KRS as 06-1584 and case no. 6:06-cv-1585-Orl-19DAB as 06-1585, when appropriate.

2. Reply To Brief of Appellee Susan Page (Case. No. 06-1584, Doc. No. 16, filed November 14, 2006);

3. Reply Brief For Appellant (Case No. 06-1584, Doc. No. 17, filed November 22, 2006);

4. Brief For Appellant (Case. No. 06-1585, Doc. No. 12, filed October 30, 2006); and

5. Reply Brief For Appellant (Case, No. 06-1585, Doc. No. 15, filed November 22, 2006).

### Background of the Case

After retaining counsel, Appellee filed a Chapter 7 petition in the Bankruptcy Court on September 2, 2005. (Aug. 16 Order, p. 2; Main Bankr. Dkt. No. 1). The Bankruptcy Court concluded, after reviewing the filed bankruptcy schedules, that Appellee's primary purpose in filing for bankruptcy was to obtain a discharge of her federal and state tax debts which amount to $278,136.11 for the 1999 tax year and $46,142.00 for the 2000 tax year. (Aug. 16 Order, p. 2; Transcript of the August 7, 2006 Hearing, p. 4, hereinafter "Aug. 7 Hearing").[2] According to the Appellant, Appellee's tax debt should be calculated as $36,254.16 for the 1999 tax year and $362,978.31 for the 2000 tax year. (Aug. 16 Order, p. 2; Aug. 7 Hearing, p. 4). These tax debts formed the majority of Appellee's overall debt. (Aug. 16 Order, p. 2; Aug. 7 Hearing, pp. 4, 9, 12). Appellee listed no secured debts and only $60,496.00 in unsecured non-priority claims against the bankruptcy estate. (Aug. 16 Order, p. 2; Aug. 7 Hearing, p. 4).

---

[2] The parties have not designated the bankruptcy disclosures, statements and schedules as part of the record on appeal. Therefore, the Court takes the tax debt amounts from the August 16, 2006 Order of the Bankruptcy Court and from the statements of the parties at the August 7, 2006 Hearing.

Appellee, again acting through counsel, then filed an adversary proceeding in the Bankruptcy Court against Appellant seeking a determination that her federal tax debts were dischargeable under Title 11 U.S.C. § 523(a)(1) and 507(a)(8)(A). (Aug. 16 Order, p. 2; Adv. Bankr. Dkt. No. 1, ¶ 1). The United States Trustee declared this bankruptcy a "no asset" case on October 5, 2005, and the Bankruptcy Court issued a discharge Order on January 12, 2006. (Aug. 16 Order, p. 2; Main Bankr. Dkt. No. 12; Main Bankr. Dkt. entry made on October 5, 2005).[3]

By then, however, Appellee's case had unraveled. She had previously filed for bankruptcy under Chapter 7 on March 11, 1999, in the District of Arizona. (Aug. 16 Order, pp. 2-3; Aug. 7 Hearing, pp. 5). She had filed for bankruptcy again, under Chapter 13, in 2001. (Aug. 7 Hearing, pp. 5). Because of her bankruptcy filings, the collection of her tax debt was equitably tolled during the period of automatic stay.[4] (Aug. 16 Order, pp. 2-3; Aug. 7 Hearing, pp. 5, 8-9, 11-13). Appellee was, therefore, unable to obtain a full discharge of her tax debts. (Aug. 16 Order, pp. 2-3; Aug. 7 Hearing, p. 5). Appellee's counsel knew that her primary purpose in filing the instant bankruptcy petition was to discharge her tax debts, and he knew of Appellee's two prior bankruptcy cases. (Aug. 16 Order,

---

[3] The Court infers that this docket entry memorializes the notice of the meeting of creditors under Bankruptcy Rule 2002, which states in relevant part:

> In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

BANKR. R. 2002(e).

[4] This result flows naturally from the holding of the U.S. Supreme Court in *Young v. United States*, 535 U.S. 43, 47 (2002). In *Young*, the Court concluded that a prior bankruptcy petition should toll the time period for priority status and dischargeability of federal taxes. *Id.*

pp. 2-3; Aug. 7 Hearing, pp. 4-5). Appellee's counsel simply did not consider the toll period when calculating the time to file that case, and as a result counsel had filed the bankruptcy petition too early to discharge all of Appellee's tax debts under Section 523(a) of the Bankruptcy Code. (Aug. 16 Order, pp. 2-3; Aug. 7 Hearing, p. 4).

According to Appellee, her counsel erred in other respects, too. First, he failed to advise her that she was required to file a separate adversary proceeding against the State of Arizona in order to discharge her state tax debt. (Aug. 7 Hearing, pp. 4-5). Secondly, he purportedly entered into a stipulation with Appellant which admitted that the majority of Appellee's tax debt was not dischargeable. (*Id.* at 5-6). Appellee allegedly did not authorize counsel to enter into this stipulation. (*Id.*). The Bankruptcy Court, however, did not consider these additional failures of counsel in its Order. (*See* Aug. 16 Order).

Based on the foregoing, Appellee's counsel sought to withdraw from the case. Once she obtained replacement counsel, the Bankruptcy Court permitted Appellee's original counsel to withdraw. (*Id.* at 2; Aug. 7 Hearing, p. 3-4). Appellee's new counsel then sought to voluntarily dismiss both the main bankruptcy case and the related adversary case pursuant to Title 11 U.S.C. § 707(a). (Aug. 16 Order, p. 2; Main Bankr. Dkt. No. 22; Adv. Bankr. Dkt. No. 23). Appellant initially did not oppose the motion, but it subsequently changed position and challenged the motion on the grounds that the circumstances in the instant case did not constitute cause for dismissal. (Aug. 16 Order, p. 2; Main Bankr. Dkt. No. 27, p. 2; Adv. Bankr. Dkt. No. 24, p. 2).

Upon consideration of Appellee's Motion To Dismiss, the Bankruptcy Court analyzed the circumstances of the instant case through the lens of equity. (Aug. 16 Order, p. 4). The Bankruptcy Court found that Appellee had not acted with unreasonable delay; that she was not delinquent in the

payment of any bankruptcy fees or charges; and that she had met all of the duties required under Section 521 of the Bankruptcy Code. (*Id.* at 5). The Court also found that Appellee had acted in good faith throughout the proceedings and that she did not have a history of abuse of the bankruptcy system. (*Id.*).

In its Order, the Court balanced the best interests of Appellee with the likely prejudice to Appellant that would result from vacating the discharge Order and dismissing the Bankruptcy Cases. (*Id.* at 4-6). The best interests of Appellee, reasoned the Bankruptcy Court, included whether she can obtain the benefit of a fresh start once she emerges from bankruptcy. (*Id.* at 5). The Court also determined that dismissal would not significantly prejudice Appellant because the United States had "ample time" to pursue the collection of its tax debts. (*Id.* at 5-6). The Bankruptcy Court concluded the balance of the equities favored dismissal. (*Id.* at 6).

Appellant subsequently appealed the Bankruptcy Court Orders in both the main case and the related adversary case. (Main Bankr. Dkt. No. 30; Adv. Bankr. Dkt. No. 27). As these consolidated appeals concern core proceedings, *see* 28 U.S.C. § 157(b), this Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

**Applicable Standards**

This appeal concerns the dismissal of a bankruptcy petition under Section 707(a) of the Bankruptcy Code. The question of whether to grant a motion to dismiss is guided by equitable principles, and consequently the decision to do so lies within the discretion of the Bankruptcy Court. *Peterson v. Atlas Supply Corp.* (*In re Atlas Supply Corp.*), 857 F.2d 1061, 1063 (5th Cir. 1988). This Court may reverse the Bankruptcy Court only where there is an abuse of such discretion. *Id.* Thus, the Court must affirm unless it finds that the Bankruptcy Court has made a clear error of judgment,

or has applied the wrong legal standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

## Discussion

Section 707(a) of the Bankruptcy Code provides for the voluntary dismissal of a Chapter 7 bankruptcy petition, after notice and hearing, "only for cause". *See* 11 U.S.C. § 707(a); *Dionne v. Simmons* (*In re Simmons*), 200 F.3d 738, 743 (11th Cir. 2000). That statue states:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors;
> > (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> > (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). Although the statute places the burden of showing cause on the movant, the three enumerated examples of cause do not form an exclusive list.[5] *In re Simmons*, 200 F.3d at 743.

Another consideration is the debtor's lack of good faith in filing the bankruptcy petition. *Turner v. United States* (*In re Turner*), 195 B.R. 476, 493 (Bankr. N.D. Ala. 1996). A Court determining whether a debtor lacked good faith undertakes a fact-sensitive inquiry that is "guided by equitable principles and should balance the benefit and harm to creditors and the debtor." *Id.* at 494 (quoting *In re Ripley & Hill, P.A.*, 176 B.R. 596 (Bankr. M.D. Fla. 1994)). At a minimum, good

---

[5] "The only guidance Congress provided as to the meaning of 'cause' in this section is an admonition that the 'ability of the debtor to repay his debts in whole or in part [does not] constitute[] adequate cause for dismissal.' " *Novak v. Wagnitz* (*In re Wagnitz*), 2004 W.L. 626821, *3 (N.D. Ill. 2004) (quoting H.R. Rep. 95-595, at 380 (1978), U.S.C.C.A.N. 1978, pp. 5963, 6336).

faith requires that the debtor have honest intentions. *In re Ripley & Hill, P.A.*, 176 B.R. at 598. Other factors that may shed light upon whether the debtor acted in good faith include:

[1]   the debtor reduced his creditors to a single creditor in the months prior to filing the petition;
[2]   the debtor made no life-style adjustments or continued living an expansive or lavish life-style;
[3]   the debtor filed the case in response to a judgment, pending litigation, or collection action;
[4]   there is an intent to avoid a large, single debt;
[5]   the debtor made no effort to repay his debts;
[6]   the unfairness of the use of Chapter 7;
[7]   the debtor has sufficient resources to pay his debts;
[8]   the debtor is paying debts of insiders;
[9]   the schedules inflate expenses to disguise financial well-being;
[10]   the debtor transferred assets;
[11]   the debtor is over-utilizing the protections of the Code to the unconscionable detriment of creditors;
[12]   the debtor employed a deliberate and persistent pattern of evading a single major creditor;
[13]   the debtor failed to make candid and full disclosure;
[14]   the debtor's debts are modest in relation to his assets and income; and
[15]   there are multiple bankruptcy filings or other procedural "gymnastics".

*In re Cappuccetti*, 172 B.R. 37, 39 (Bankr. E.D. Ark. 1994).

In addition, "courts also seek to protect the debtor's fresh start and to facilitate the fair and orderly distribution of assets" in Chapter 7 cases. *In re Ripley & Hill, P.A.*, 176 B.R. at 598. "[E]nsuring a 'fresh start' for individual debtors," Justice Souter reminds us, "[is] at the core of federal bankruptcy law." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563 (1994) (Souter, J., dissenting).

Appellant argues that the Bankruptcy Court failed to follow "precedent", that is, a decision by the Bankruptcy Appellate Panel ("BAP") of the U.S. Court of Appeals of the Ninth Circuit which held that a debtor's mistake in filing a bankruptcy petition too early to discharge a tax debt does not constitute cause for dismissal under Section 707(a). (Doc. No. 13, 5-6). Appellant also contends that

the Bankruptcy Court erred in determining the prejudice to it by improperly calculating the time period that Appellee would have to wait before she could re-file her bankruptcy petition. (*Id.* at 9).

Appellee asserts that the Order of the Bankruptcy Court properly considers the factors enumerated in Section 707(a) of the Bankruptcy Code; discussed by the U.S. Court of Appeals for the Eleventh Circuit in *In re Simmons*; and considered by the Court in *In re Fultz*, 2000 Bankr. LEXIS 195 (Bankr. N.D. Fla. 2004). (Doc. No. 16, pp. 6). Appellee also points out that Appellant has improperly calculated her discharge date in its opening brief. (*Id.* at 6).

In reply, Appellant concedes that Appellee correctly identified its calculation error and concedes that Appellee would have to wait until some time in 2008 before she could re-file for bankruptcy. (Doc. No. 17, p. 2). Thus, Appellant has from about eighteen months to about twenty-four months to collect the outstanding tax debt, depending upon one's calculation.[6] (*Id.*). Nevertheless, Appellant contends that it would be unduly prejudiced because it would have an additional six years to collect the subject tax debt if the instant case was not dismissed by the Bankruptcy Court. (*Id.*).

Appellant places the greater weight of its position on the holding of the Ninth Circuit Bankruptcy Appellate Panel in *Leach v. United States* (*In re Leach*), 130 B.R. 855 (9th Cir. B.A.P. 1991), and the Court begins its analysis with that case. Initially, its important to note that *In re Leach* is only useful for its persuasive authority. The holding of the Ninth Circuit BAP is not binding on this Court or the Bankruptcy Court, and for that matter, it is not entirely clear whether a BAP decision is binding on any Court. *See Zimmer v. PSB Lending Corp.* (*In re Zimmer*), 313 F.3d 1220,

---

[6] Its not entirely clear from Appellant's reply what exact time frame it now thinks is appropriate, but it does state that the difference between these time periods and its own is "not significant". (Doc. No. 17, p.2).

1225 n.3 (9th Cir. 2002) ("Although the binding nature of Bankruptcy Appellate Panel decisions--an open question in this circuit--is not squarely before us in this case, we join Judge O'Scannlain's call for the Judicial Council to consider an order clarifying whether the bankruptcy courts must follow the BAP."); *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir. 1989); *Daly v. Deptula* (*In re Carrozzella & Richardson*), 255 B.R. 267 (Bankr. D. Conn. 2000) (holding that a decision of the Second Circuit BAP does not bind Bankruptcy Courts in the Second Circuit).

Secondly, the correctness of the holding itself is dubious to the extent that *In re Leach* stands for the proposition that a Bankruptcy Court may do no more once a creditor ferrets out some "legal prejudice" if the debtor's dismissal were to be granted. 130 B.R. at 857 ("This case can be disposed of based on *Hall* without any further discussion. The equitable considerations insisted upon by Leach are only relevant in the absence of dispositive legal arguments.") (footnote omitted). That is clearly not the case. The Bankruptcy Court must still undertake a fact-sensitive inquiry that is guided by equitable considerations, which balances the benefit and harm to creditor and debtor alike. *See Quenzer v. United States* (*In re Quenzer*), 19 F.3d 163, 165 (5th Cir. 1993) (noting the importance of a fact driven inquiry when deciding to discharge a debt under Section 523 of the Bankruptcy Code); *In re Hall*, 339 B.R. 304, 307 (Bankr. E.D.N.Y. 2006) (balancing the benefit and harm to the creditor and debtor despite the presence of prejudice to the taxing authorities); *cf. eBay v. MercExchange, L.L.C.*, 547 U.S. ----, ----, 126 S.Ct. 1837, 1842 (2006) ("[T]raditional equitable principles do not permit . . . broad classifications."). The presence of prejudice to one creditor does not short-circuit this inquiry.

As to the circumstances of the instant case, the Court concludes that the Bankruptcy Court did not abuse its discretion when it dismissed Appellee's case. Appellant does not dispute that

Appellee has acting in good faith throughout these proceedings. It does not dispute the Bankruptcy Court's finding the Appellant did not unreasonably delay her motion to dismiss, or its findings that she had paid her bankruptcy fees and complied with the requirements of Section 521. It also does not dispute the Bankruptcy Court's finding that Appellee is not abusing the bankruptcy system. The only prejudice that the Appellant has identified is the loss of approximately six years of time in which to collect Appellee's 2000 tax debt.[7] (Doc. No. 17, p. 2). Appellant acknowledges, however, that it has at least a year-and-a-half to two years to undertake a collection action against Appellee. (*Id.*).

The Court does not find Appellant's argument concerning prejudice compelling. First, creditors are not generally prejudiced by dismissal of bankruptcy cases as they will no longer be stayed from resorting to the courts to collect their outstanding debts. *See In re Hall*, 339 B.R. at 309. Secondly, Appellant's argument is not based on its reasonable pre-petition legal expectations but is based instead upon the loss of an opportunity to collect that only exists because of the bankruptcy process. *See id.* ("[I]t is the reasonable pre-petition legal expectations of a debtor's creditors that should be considered in the context of a . . . motion to dismiss, not the loss of an opportunity to receive a distribution through the bankruptcy process."). Although Appellant may have identified some legal prejudice, its entirely reasonable for the Bankruptcy Court to give such prejudice little weight in view of the remaining equitable considerations in the instant case.

Thus, when such modest prejudice is balanced against the conduct of Appellee's former attorney, her good faith, and her desire to obtain a fresh start, the tilt of the equitable considerations

---

[7] Appellant suggests it would have at least this much time because, if the instant case were discharged, Appellee could not petition the Bankruptcy Court again for eight years. *See* 11 U.S.C. § 727(a)(8).

become clear, and the Bankruptcy Court did not abuse its discretion in granting Appellee's Motion To Dismiss.

**Conclusion**

Based on the foregoing, the Court **AFFIRMS** the August 16, 2006 Order of the Bankruptcy Court.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January <u>8th   </u>, 2007.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record